## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

In re Application of

**Harry Sargeant, III**

To Issue a Subpoena for the Taking of
Discovery for Use in a Foreign Proceeding

Case No. 1:17-mc-00374

### *EX PARTE*[1] APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO ISSUE A SUBPOENA FOR THE PRODUCTION OF DOCUMENTS FOR USE IN A FOREIGN PROCEEDING

Harry Sargeant, III (the "Applicant" or "HS3") applies to this Court for an Order, under 28 U.S.C. § 1782 and Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, granting Applicant leave to serve subpoenas attached as **Exhibit 1** requiring Burford Capital, LLC ("Burford") (the "**Discovery Subject**") to produce documents.

The Applicant seeks assistance from the United States District Court in and for the Southern District of New York to obtain evidence from the Discovery Subject residing and conducting business in this District. The Applicant seeks evidence relevant to Panamanian attachment proceedings brought by the Applicant as explained more fully below. Applicant is also contemplating joining litigation currently pending in London, which is also described more fully below. Finally, depending on the documents disclosed in this application, Applicant may have causes of action in Isle of Man or separately in the United Kingdom.

---

[1] This application may be filed ex parte. *See, e.g., In re Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1267 (11th Cir. 2014) ("the district court granted the ex parte application"); *In re Application of Alves Braga*, 789 F. Supp. 2d 1294, 1303 (S.D. Fla. 2011) ("There is nothing inappropriate about an *ex parte* application under this statute. In fact, in the Court's experience, most applications filed here in this district are submitted on an *ex parte* basis.").

1

The evidence is necessary and will be used in prosecution of the Applicant's proceeding in Panama as well as informing Applicant as to his rights in other pending and potential lawsuits in the United Kingdom and the Isle of Man.  The Applicant is an interested person in his capacity as the plaintiff in Panama and in contemplating becoming a party in other litigation in foreign jurisdictions.  The Discovery Subject is found in the Southern District of New York.

**Factual Information Regarding Foreign Proceeding and Discovery Subject**

1.      HS3 has attachment proceedings pending against Maroil Trading Inc. ("**Maroil**"), Sea Pioneer Shipping Corporation ("**SPSC**"), and Wilmer Ruperti Perdomo also known as Wilmer Ruperti ("**Ruperti**") in Panama.  Maroil and SPSC are both incorporated under the laws of Panama and controlled by Ruperti.  Maroil, SPSC, and Ruperti are collectively referred to as the "**Panamanian Defendants**."  A translated copy of the complaint in Panama is attached as **Exhibit 2**.

2.      Burford is located and conducts business at 292 Madison Ave, New York, NY 10017.  **Exhibit 3**.

3.      HS3 is the son of Harry Sargeant, Jr. and has two brothers, Daniel Sargeant and James Sargeant (Harry Jr., James, and Daniel Sargeant are collectively the "**Sargeant Family**"). HS3 and the Sargeant Family shared many family business ventures.  One such business venture was Latin America Investments, Ltd ("**LAIL**"), a company organized under the laws of the Isle of Man to operate oil shipping platforms.  HS3 was a 25% shareholder in LAIL; the remaining 75% shares of LAIL were owned and controlled by the Sargeant Family. At all times herein material, the Sargeant Family conducted the business of LAIL from Florida.

4.      LAIL brought suit against two of the Panamanian Defendants in litigation currently pending in the London Commercial Court (Claim No. CL-2017-000130) (the "**London**

**Litigation**") (the London Litigation claim form is attached as **Exhibit 4**).  The London Litigation is based on a fraud perpetrated by the Panamanian Defendants on LAIL, concealing and secreting over $177 million in settlement proceeds (the "**PDVSA Settlement**") for claims LAIL held against PDVSA Petroleo, S.A. ("**PDVSA**").  Exhibit 4 ¶¶ 39-55.  The Panamanian Defendants perpetrated this fraud on LAIL while HS3 was a 25% shareholder of LAIL.

*Background to the Panamanian Defendants' Fraud*

5.      LAIL and the Panamanian Defendants had joint shipping contracts with PDVSA for various tanker ships in certain joint venture companies.  A third company, Oceanic Trans Shipping, Est. ("**OTS**"), was also an equal shareholder in some of the joint venture companies. The tanker ships were on charter to PDVSA through the Panamanian Defendants or companies controlled by the Panamanian Defendants.  Exhibit 4 ¶¶ 8-14.

6.      Disputes with PDVSA over the shipping contracts arose.  In August 2011, two of the joint venture companies filed an arbitration claim for $106.5 million against PDVSA for failure to nominate or perform the minimum number of shipments required under contracts of affreightment held with PDVSA (the "**First PDVSA Arbitration**"). Exhibit 4 ¶¶ 35-37.

7.      In August 2012, the remaining joint venture companies and companies related to two more tanker ships controlled in part by Ruperti wrote a separate claim letter to PDVSA for $580 million. Exhibit 4 ¶ 38.

8.      In April 2014, Commerzbank Aktiengesellschaft ("**Commerzbank**"), the bank holding a security interest in some of the tanker ships, filed its own arbitration as assignee under some of the PDVSA contracts (the "**Second PDVSA Arbitration**"). Exhibit 4 ¶ 41.

9.      In December 2014, PDVSA and the Panamanian Defendants purportedly held settlement talks in Caracas, Venezuela resulting in the PDVSA Settlement.  Settlement was

agreed during that meeting for all outstanding claims, the First and Second PDVSA Arbitrations and the August 2012 letter of claim.  The PDVSA Settlement was apportioned into a $30 million payment to settle the First and Second Arbitrations, and a $230 million payment to settle the claims related to the August 2012 claim letter.  Exhibit 4 ¶ 46-47.

10.     Pursuant to the PDVSA Settlement of the First and Second PDVSA Arbitrations, on January 30, 2015, PDVSA paid $30 million into a bank account with Commerzbank. Commerzbank then paid $10 million to Ruperti as a commission into a Sparkasse Bank Account. Commerzbank stated that this commission payment was in settlement of LAIL and OTS's claims. Exhibit 4 ¶¶ 48-51.

11.     The remaining PDVSA monies were paid by installments totalling $167.6 million to Maroil's Sparkasse Bank Account, with the balance of $62 million to be paid by installments to Intercontinental View, Inc. of Panama ("**Intercontinental**"), another company controlled by Ruperti that has since been dissolved.  Exhibit 4 ¶ 47.2.  The Panamanian Defendants purportedly assigned certain unspecified claims, likely some claims belonging to LAIL and/or OTS against PDVSA, to Intercontinental.  Under the terms of the agreement with PDVSA, all payments were paid no later than May 30, 2015.  Exhibit 4 ¶ 47.2.

12.     The Panamanian Defendants actively and fraudulently concealed from HS3 the PDVSA Settlement and the payments of the PDVSA Proceeds, and misappropriated at least $177.6 million.

***Ruperti's Litigation with Novoship Precipitates Ruperti's Fraud Against HS3***

13.     Novoship (UK) Ltd. ("**Novoship**") and others brought several actions against Ruperti and others including Commercial Court proceedings brought by Novoship and others in 2006 (Claim No. 2006 Folio 1267), proceedings brought by Novoship against Ruperti personally

in Switzerland, enforcement action brought by Novoship and others against Ruperti in Miami-Dade County (Case No: 13-24106 CA 20), and an action brought by Novoship and others against Ruperti and others in the Southern District of New York (Case No: 07-CV-9876 (DLC)) (the "**Novoship Actions**").

14.     At least one judgment was rendered as a result of the Novoship Actions resulting in at least a $59 million liability by Ruperti.  Article reporting judgment attached as **Exhibit 5**.

15.     Ruperti repeatedly asserted to LAIL, including HS3's agents, that settlement was not possible because of his the pending Novoship Actions and outstanding judgment(s).

16.     Shortly after the PDVSA Settlement, Ruperti and Novoship announced a global settlement of their dispute. Article reporting settlement attached as **Exhibit 6**.

17.     After this global settlement between Ruperti and Novoship, Novoship's litigation funder, the Discovery Subject, exchanged documents with LAIL.  LAIL originally learned of the PDVSA Settlement through document exchanges with the Discovery Subject and/or persons or entities controlled by or related to the Discovery Subject.

***HS3 Discovers the Fraud***

18.     In 2017, LAIL filed the London Litigation against Defendants Maroil and SPSC seeking recovery of the PDVSA Proceeds.  As part of the freezing order application, LAIL alleged that some of the proceeds from the PDVSA Settlement were dissipated at least in part. (Exhibit 4 ¶¶ 57, 60.3, 64.3, and 68.1).

19.     HS3 is pursuing claims in Panama against Maroil, SPSC, and Ruperti given his status as a 25% owner of LAIL at the time the fraud and misappropriation took place.  Exhibit 2. Nearly four months after the PDVSA Settlement was consummated, HS3, unaware of the fraud,

agreed to surrender his interest in LAIL for no value as part of a separation agreement with the other 75% shareholders relative to unrelated issues and disputes.

20.     The Panamanian Defendants perpetrated a fraud on HS3 beginning no later than December 2014, while HS3 was a LAIL shareholder, by fraudulently concealing that the Defendants had received funds totaling $10 million from Commerzbank and $167.6 million from PDVSA, in connection with the PDVSA Settlement.  Exhibit 4 ¶¶ 39-55.

21.     In the absence of the Panamanian Defendants fraud concealing the PDVSA Settlement and the misappropriation of the PDVSA Proceeds, HS3 would have known of the $177.6 million liquidated value of LAIL's PDVSA claims and the entitlement to the PDVSA Proceeds.

***Connection Between Panamanian Defendants and the Discovery Subject***

22.     HS3 seeks documentary and testimonial evidence from the Discovery Subject residing and found in the Southern District of New York.  The Discovery Subject is the litigation funder for the Novoship Actions against Ruperti.  The Discovery Subject therefore, has access to much of the discovery obtained from or relating to Ruperti and the other Panamanian Defendants in the Novoship Actions.

23.     Evidence from the Discovery Subject is vital to piecing together the sequence of Ruperti's fraud and is useful for tracing Ruperti's assets to aid in the attachment proceeding in Panama and assist HS3 to evaluate his claims in the London Litigation.

24.     Accordingly, HS3 respectfully requests that the Application under 28 U.S.C. § 1782 be granted and that Applicant be authorized to serve subpoenas including requests in substantially in the same form as those attached as **Exhibit 1**.

## ARGUMENT

## I.   LEGAL BACKGROUND

United States District Courts are authorized to order a person residing in their district to produce documents for use in foreign tribunals upon the application of an interested person under 28 U.S.C. § 1782.  The statute provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

The mandatory provisions of § 1782 are satisfied upon a showing that (1) a request is made by a foreign or international tribunal or any interested person, (2) the request seeks evidence, either testimony or statement of a person or production of a document or other thing, (3) the evidence is for use in a foreign or international tribunal, and (4) the person from whom discovery is sought resides or is found in the district of the court ruling on the application.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

If the four mandatory requirements are met, then the district court exercises its discretion in determining whether to provide assistance.  *Id.*  The district court considers four discretionary factors: (1) whether the person from whom discovery is sought is a participant in a foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings in the foreign tribunal, and the receptivity of the foreign government, court, or agency to U.S. federal-court assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering

restrictions or other foreign or U.S. policies; and (4) whether the request is unduly intrusive or burdensome. *Id.*

II.   HS3 MEETS THE MANDATORY REQUIREMENTS FOR GRANTING RELIEF

   A.   *The Applicant is an Interested Person*

HS3 is an interested person pursuant to § 1782 as he is currently a litigant in an attachment request against the Panamanian Defendants in Panama.   A litigant in a foreign proceeding falls squarely within the interested person requirement.   See *Intel*, 542 U.S. at 256 ("litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").   HS3 is also contemplating joining the London Litigation. Thus, HS3 is an interested person and meets the first requirement.

   B.   *The Application Requests Evidence for Use in a Proceeding in a Foreign Tribunal*

To meet the second and third requirements, an application under § 1782 must request evidence for use in a proceeding in a foreign tribunal.   These two requirements can even be met with a foreign proceeding not actually pending but within reasonable contemplation.   *Intel*, 542 U.S. at 259.   Although the evidence must at least be anticipated to be used in a foreign proceeding, § 1782 does not require complete use of the evidence obtained through § 1782.   *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007) ("Once discovery is authorized under § 1782, the federal discovery rules" control the actual process for obtaining the discovery); *see also Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) ("Section 1782 does not require that every document discovered be actually used in the foreign proceeding.").

As explained above, HS3's proceeding in Panama is currently pending.   Also, HS3 is contemplating joining the London Litigation, but needs this discovery in order to further investigate his claim in connection with the London Litigation.   This Application requests documents that would be used in both proceedings.   The Application seeks to obtain documents

relevant to the Panamanian Defendants, the PDVSA Settlement, and LAIL's role and interaction with the Panamanian Defendants and knowledge of the PDVSA Settlement.  The documents would be used to pursue claims in a Panamanian tribunal to recover damages as a result of the Panamanian Defendants' fraud and concealment.  Thus, the Application has sufficiently demonstrated that the application seeks evidence useful for foreign proceedings.

C.  *The Discovery Subject Resides or is Found in the District*

The Discovery Subject is found within this District for purposes of § 1782.  To come within the reach of § 1782, a discovery subject may reside in the District where the application is filed, but need only be found within the district.  Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l. L. & Com. 1, 10 (1998) ("The evident statutory purpose [of section 1782] is to create adjudicatory authority based on presence.").

The Discovery Subject is a litigation funder conducting business in New York, New York.  Thus, it is found in the Southern District of New York and is properly within the purview of § 1782.

III.  <u>This Court Should Exercise its Discretion in Favor of Granting Relief</u>

As demonstrated above, this Application satisfies the mandatory requirements for relief under § 1782 and this Court may exercise its discretion in granting the discovery requested.  In exercising its discretion, this Court considers the four factors outlined by the Supreme Court in *Intel*.  *See Intel*, 542 U.S. at 264.

A.  *Whether the Person From Whom Discovery is Sought is a Participant in a Foreign Proceeding*

The first discretionary factor weighs in favor of granting relief because the Discovery Subject is not currently subject to the jurisdiction of the foreign tribunal.  This Court may

consider whether the person from whom discovery is sought is a participant in the foreign proceeding for which the evidence is sought. *Id.* at 264. If the person is a nonparticipant, then it may be outside of the foreign tribunal's reach to order discovery of evidence located in the United States; thus assistance from a United States District Court would be appropriate. *Id.* A law firm is an appropriate discovery subject under § 1782. *See, e.g.*, *In re Application of Schmitz*, 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003) (law firm proper § 1782 discovery subject even though law firm only had temporary possession of the documents at the direction of its client solely for the purposes of the litigation).

HS3's Application seeks documents from Burford. Burford is not adverse to HS3 in any foreign proceedings. HS3 is not a party to the London Litigation and cannot seek assistance from that tribunal. HS3 is also pursuing separate claims in Panama, and the information contained in the documents sought from Burford will be useful for that proceeding. The Panamanian tribunal cannot exercise its own jurisdiction to order the production of the documents requested in the Application. Thus, this factor weighs in favor of granting relief.

**B.** *The Nature of the Foreign Tribunal and Receptivity to U.S. Federal-Court Assistance*

This Court may consider the nature of the foreign tribunal and the receptivity of the foreign court, agency, or government to U.S. federal-court assistance. *Intel*, 542 U.S. at 264. There is no indication that the Panamanian tribunal would not be receptive to this Court's assistance in ordering the discovery sought in the Application. In fact, a Panamanian court itself issued a letter rogatory under § 1782 seeking assistance from this District in the past. *See In re Clerici*, 481 F.3d 1324, 1335 (11th Cir. 2007) (Panamanian court issued a letter rogatory requesting assistance from the Southern District of New York due to a party's presence in the United States). Thus, the receptivity factor also weighs in favor of granting relief.

10

C. _Whether the Request Seeks to Circumvent Foreign Restrictions_

HS3's Application does not seek to circumvent the Panamanian tribunal's discovery methods or restrictions.  *See In re Mesa Power Group, LLC*, 878 F. Supp. 2d 1296, 1304-05 (S.D. Fla. 2012) ("Absent a persuasive showing that a section 1782 applicant . . . is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions . . . this factor does not counsel against section 1782 relief.").  HS3's Application aligns with the purpose of § 1782, to provide assistance to participants in foreign litigation and encourage foreign courts to provide similar assistance to U.S. courts.  *Intel*, 542 U.S. at 252.  HS3's Application is a good-faith attempt to seek assistance in obtaining documents that may be used in claims against the Panamanian Defendants and allow HS3 to participate in the London Litigation.  Therefore, this factor also weighs in favor of granting relief.

D. _Whether the Request is Unduly Burdensome or Intrusive_

HS3's request for discovery is not unduly burdensome or intrusive.  HS3's Application limits the discovery to non-privileged documents related to Ruperti and the Panamanian Defendants and Novoship's role in the PDVSA Settlement that are in the custody of the Discovery Subject.  As a safeguard, this Court has the ability to take appropriate measures to limit the discovery sought so that it is not burdensome.  *See Intel*, 542 U.S. at 265.  This factor also weighs in favor of granting relief.

As demonstrated, HS3's Application meets the mandatory requirements of § 1782.  In addition, the discretionary factors all weigh in favor of this Court granting relief.

WHEREFORE, HS3 respectfully requests this Court to enter an Order, in the proposed, or substantially similar, form attached as **Exhibit 7**:

(a) exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this Application

   for Judicial Assistance;

(b) ordering that discovery taken pursuant to this Application and Order will be governed

   by the Federal Rules of Civil Procedure;

(c) granting HS3 leave to conduct discovery on the Discovery Subject in support of his

   claim against the Panamanian Defendants pursuant to the Federal Rules of Civil

   Procedure, including, but not limited to, leave to serve subpoenas, in substantially the

   same form as the sample subpoena attached as Exhibit 1; and

(d) any other relief this Court deems just and proper.


Dated:  September 29, 2017.

                                             Respectfully Submitted,

                                             */s/  Anne B. Sekel*

                                             Anne B. Sekel (AS1029)
                                             **FOLEY & LARDNER LLP**,
                                             90 Park Ave
                                             New York, NY 10016
                                             Phone: (212) 682-7474
                                             Facsimile: (212) 687-2329

                                             ***Attorney for Applicant***

12