UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

IN RE APPLICATION OF

HARRY SARGEANT, III : 17mc374

TO ISSUE A SUBPOENA FOR THE : OPINION & ORDER
TAKING OF DISCOVERY FOR USE IN
A FOREIGN PROCEEDING

------------------------------------------------------------

WILLIAM H. PAULEY III, District Judge:

  Harry Sargeant III ("Sargeant") brings this application <u>ex parte</u>[1] under 28 U.S.C. § 1782 for an order granting him leave to serve a subpoena on Burford Capital, LLC ("Burford") to produce documents for use in a Panamanian attachment proceeding. In addition, Sargeant claims that the requested discovery will inform him of his rights with respect to a pending lawsuit in the United Kingdom that he contemplates joining, as well as his rights with respect to potential lawsuits in the United Kingdom and the Isle of Man that he contemplates initiating. While Sargeant apparently seeks to serve multiple subpoenas, he attaches only one to his application. Accordingly, this Court treats this proceeding as addressed solely to the attached subpoena. For the reasons that follow, Sargeant's application is denied.

BACKGROUND

I.  <u>Facts Underlying the Panamanian and London Proceedings</u>

  Latin America Investments, Ltd. ("LAIL") is an Isle of Man company that operates oil shipping platforms. (<u>Ex Parte</u> Application for an Order under 28 U.S.C. § 1782 To

---

[1]   It is "neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 <u>ex parte</u>." <u>Gushlak v. Gushlak</u>, 486 F. App'x 215, 217 (2d Cir. 2012).

Issue a Subpoena for the Production of Documents for Use in a Foreign Proceeding, ECF No. 2 ("Section 1782 Application"), ¶ 3.) It was 25% owned by Sargeant and 75% owned by his two brothers and father during the events described below. (Section 1782 Application ¶ 3.) In relevant part, LAIL and the Panamanian Defendants—Maroil Trading Inc. ("Maroil"), Sea Pioneer Shipping Corporation ("Sea Pioneer"), and Wilmer Ruperti—entered into "joint shipping contracts" with PDVSA Petroleo, S.A ("PDVSA"), a Venezuelan company. (Section 1782 Application ¶ 5.)

Disputes arose "with PDVSA over the shipping contracts" and PDVSA's "failure to nominate or perform the minimum number of shipments required under contracts of affreightment." (Section 1782 Application ¶ 6.) In December 2014, PDVSA and the Panamanian Defendants purportedly held settlement talks to resolve those disputes. (Section 1782 Application ¶ 9.) On January 30, 2015, PDVSA paid $30 million to Commerzbank Aktiengesellschaft, an assignee of some of the shipping contracts. (Section 1782 Application ¶ 10.) Commerzbank subsequently paid $10 million of that sum to the Panamanian Defendants, allegedly in settlement of LAIL's claims. (Section 1782 Application ¶ 10.) As part of the settlement, PDVSA also paid $167 million to Maroil and another $62 million to a separate company controlled by Ruperti, who had purportedly assigned some of LAIL's claims against PDVSA to that entity. (Section 1782 Application ¶ 11.) By these actions, Sargeant claims that the Panamanian Defendants fraudulently concealed and misappropriated at least $177 million in settlement proceeds. (Section 1782 Application ¶ 12.)

The twist in this yarn is that Ruperti had repeatedly asserted to LAIL that settlement with PDVSA was not possible because of his pending litigation with Novoship (UK) Ltd. and outstanding judgments against him in connection with the Novoship lawsuits. (Section

1782 Application ¶ 14.) The Novoship actions concerned losses sustained by Novoship arising from ship chartering bribery engineered by Ruperti and others between 2002 and 2005. (Section 1782 Application, Exs. 5-6.) LAIL only learned of the settlement between the Panamanian Defendants and PDVSA after LAIL exchanged documents with Burford, Novoship's litigation funder. (Section 1782 Application ¶ 17.)

II. The Proceedings

In March 2017, LAIL sued Maroil and Sea Pioneer in the United Kingdom to recover the funds that were allegedly misappropriated and fraudulently concealed by the Panamanian Defendants. (See Section 1782 Application, Ex. 4.) Importantly, at the time LAIL commenced the London proceeding, Sargeant had already agreed to surrender his 25% stake in LAIL as part of a separation agreement with his father and two brothers, the 75% shareholders. (Section 1782 Application ¶ 19.)

In July 2017, Sargeant commenced a proceeding in Panama against the Panamanian Defendants to attach up to $50,000 of the Panamanian Defendants' assets, given his status as a 25% owner of LAIL at the time the fraud was perpetrated. (See Section 1782 Application, Ex. 2.) According to Sargeant, as Novoship's litigation funder, Burford "has access to much of the discovery obtained from or relating to Ruperti and the other Panamanian Defendants in the Novoship Actions." (Section 1782 Application ¶ 22.) Sargeant seeks to use this discovery to assist his prosecution of the Panamanian attachment proceeding and to assess whether he should join the pending London proceeding or initiate additional proceedings of his own in the United Kingdom or the Isle of Man.

LEGAL STANDARD

A discovery application under 28 U.S.C. § 1782 "presents two inquiries: first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so." In re Application of Grupo Qumma, 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005). "A district court has authority to grant a § 1782 application where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (internal quotations omitted).

Once the statutory prerequisites are met, the Court must then decide whether to exercise its discretion to grant the application "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004). The Supreme Court has enumerated four factors that bear consideration: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case, "the need for § 1782(a) is generally not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the § 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004).

DISCUSSION

Sargeant seeks to obtain "documents relevant to the Panamanian Defendants, the PDVSA Settlement, and LAIL's role and interaction with the Panamanian Defendants and knowledge of the PDVSA Settlement" from Burford for use in the Panamanian proceeding, the London proceeding, and potential proceedings in the United Kingdom or the Isle of Man that he contemplates initiating. (Section 1782 Application at 8-9.) Because Sargeant has not satisfied the statutory prerequisites as to any of these pending or potential proceedings, his application is denied, and this Court need not proceed to an analysis of the Intel factors.

I.  Panamanian Proceeding

Turning to the first statutory prerequisite, Sargeant's failure to demonstrate that Burford "resides" or "is found" in the Southern District of New York sinks his application. As a threshold matter, Section 1782 does not define what it means for an entity to reside or be found in a district. Hans Smit, a leading academic commentator and drafter of § 1782, has commented that the language "defining [§ 1782's] in personam reach must . . . be given a liberal construction commensurate with" the purpose "to liberalize the assistance given to foreign and international tribunals." Hans Smit, "American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited," 25 Syracuse J. Int'l L. & Com. 1, 9 (1998). According to Professor Smit, a discovery target "should be regarded as 'resident'" if "the relationship of the person addressed to the district is such as to warrant the exercise of in personam authority under the due process clause." Smit, 25 Syracuse J. Int'l L. & Com. at 10 ("Insofar as the term ['found'] applies to legal rather than natural persons, it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities with presence.").

It is unclear whether § 1782's statutory prerequisite that a person or entity reside or be found in a district is coextensive with whether a court has personal jurisdiction over that person or entity.[2] At minimum, however, compelling an entity to provide discovery under § 1782 must comport with constitutional due process. Cf. Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd., 2017 WL 3841874, at *4 (S.D.N.Y. Sept. 1, 2017) (analogizing to Second Circuit precedent requiring that a court have personal jurisdiction to order a non-party to comply with a discovery request under Rule 45); accord Smit, 25 Syracuse J. Int'l L. & Com. at 9-10 (couching the "resides or is found" requirement in constitutional due process language). Due process constrains the exercise of general personal jurisdiction over "foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[3] BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014)) (quotation marks omitted). While "[t]he 'paradigm' forums in which a corporate defendant is 'at home' . . . are the corporation's place of incorporation and its principal place of business," in "an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" BNSF Ry. Co., 137 S. Ct. at 1558.

In a pre-Daimler decision interpreting § 1782's "resides or is found" requirement, the Second Circuit expressed its view that "the Supreme Court authorized the exercise of

---

[2] To lawfully exercise personal jurisdiction: "First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles." Waldman v. Palestinian Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016) (quotation marks omitted).

[3] There is no discernable reason why the Supreme Court's recent jurisprudence on this issue should not also apply to other types of corporate entities. Indeed, Daimler itself analyzed whether Mercedes-Benz USA, a limited liability company, was subject to general jurisdiction in California.

6

personal jurisdiction based on nothing more than physical presence." In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002) (citing Burnham v. Superior Court of Cal., 495 U.S. 604 (1990) (plurality opinion)). The Edelman court reasoned that because this "so-called tag jurisdiction is consistent with due process," the statute—"which is simply a discovery mechanism and does not subject a person to liability"—did not require more. In re Edelman, 295 F.3d at 179. Thus, it concluded that the phrase "or is found" in § 1782 should be "endow[ed] . . . with the same breadth as that accorded" it in Burnham. In re Edelman, 295 F.3d at 179. But Edelman does not control the outcome here because Burnham's holding applied only to individuals, not corporate entities. Accord Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 182 (5th Cir. 1992) (explaining that Burnham "did not decide any jurisdictional issue pertaining to corporations").

Moreover, if a business entity could be subject to personal jurisdiction anywhere it maintains a physical presence—i.e., an office—then Daimler's holding would be rendered meaningless. See Daimler, 134 S. Ct. at 761 n.18 (observing that cases that "upheld the exercise of general jurisdiction based on the presence of a local office, which signaled that the corporation was 'doing business' in the forum," were "decided in the era dominated by Pennoyer's territorial thinking . . . [and] should not attract heavy reliance today"); cf. Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) (explaining that Daimler "considerably altered the analytical landscape for general jurisdiction and left little room for arguments" that "contacts of substance, deliberately undertaken and of some duration, could place a corporation 'at home' in many locations"). Thus, to "reside" or be "found" in a district for purposes of § 1782, a corporate entity must at the very least be subject to the court's general jurisdiction under Daimler.

Here, Sargeant alleges that Burford conducts business in New York, New York.

7

(Section 1782 Application at 9.) At most, the papers supporting the application indicate that Burford, a foreign limited liability company, maintains one of its "primary business offices" at 292 Madison Avenue, New York, NY 10017. (Section 1782 Application, Ex. 3.) On the current record before this Court, Sargeant has not established the first statutory prerequisite. Burford is clearly not incorporated or formed under the laws of New York, and the mere fact that it maintains an office in New York City—even a "primary" office, whatever that may mean—from which it conducts business does not establish that its principal place of business is its midtown Manhattan location. Nor is the bare allegation that Burford conducts business in New York sufficient to establish that its operations in that office are "so substantial and of such a nature" as to render Burford at home in New York. See Gucci Am., Inc. v. Li, 768 F.3d 122, 135-36 (2d Cir. 2014) (concluding that the mere fact that a bank conducted business through branch offices in New York was insufficient to satisfy constitutional due process); see also Daimler AG, 134 S. Ct. at 762 n.20 ("General jurisdiction . . . calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them.").

While Sargeant's failure to satisfy the first statutory prerequisite dooms his application, this Court nevertheless addresses the second and third prerequisites under § 1782 in the event that Sargeant is able to show that Burford resides or may be found in the Southern District of New York. Under the second statutory prerequisite, the discovery must be "for use" in a foreign proceeding before a foreign or international tribunal. The Panamanian judicial proceeding undoubtedly qualifies as a foreign proceeding, and Sargeant has argued that the discovery he seeks will be used to "piec[e] together the sequence of Ruperti's fraud" and to

8

"trac[e] Ruperti's assets to aid in the attachment proceeding." (Section 1782 Application ¶ 23.)[4] As for the third statutory prerequisite, Sargeant—the plaintiff in the Panamanian proceeding—is certainly an interested person within the meaning of the statute. Intel Corp., 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782 . . . .").

II.     London Proceeding

Although Sargeant's failure to satisfy the first statutory prerequisite that Burford resides or is found in the Southern District of New York is fatal to his application, this Court proceeds to the other statutory requirements in an excess of caution. As an initial matter, the London proceeding that is pending in the London Commercial Court is also a foreign proceeding. However, Sargeant fails to show that the requested discovery is "for use" in that proceeding or that he is an "interested person" with respect to that proceeding.

The phrase "'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail." Mees, 793 F.3d at 298. Thus, an applicant can use § 1782 to "seek discovery of any materials that can be made use of in the foreign proceeding to increase [the] chances of success." In re Grynberg, 223 F. Supp. 3d 197, 200-01 (S.D.N.Y. 2017). But this requirement focuses on the "practical ability of an applicant to place a beneficial

---

[4] The application elsewhere seeks "non-privileged documents related to Ruperti and the Panamanian Defendants and Novoship's role in the PDVSA Settlement" in Burford's custody or control. (Section 1782 Application at 11.) However, Sargeant has not shown that the Novoship lawsuits, which concern ship chartering bribery orchestrated by Ruperti and Russian businessmen between 2002 and 2005 (see Section 1782 Application, Exs. 5-6), are remotely relevant to the conduct underlying the Panamanian proceeding—the alleged concealment and misappropriation of proceeds arising from a settlement of an affreightment dispute among PDVSA, LAIL, and the Panamanian Defendants. (See Section 1782 Application ¶ 6.) Given the facial irrelevance of the merits underlying the Novoship actions, it is unlikely that they can be "for use" in the Panamanian proceeding. KPMG, 798 F.3d at 120 n.7 ("[I]t is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding.").

9

document—or the information it contains—before a foreign tribunal." In re Accent Delight Int'l Ltd., 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original). Indeed, as the Second Circuit has recently reaffirmed, an applicant must be in a "position to have the [tribunal] consider that evidence" or have some "means of injecting the evidence into the proceeding" to "use" the evidence. In re Accent Delight Int'l Ltd., 869 F.3d at 131 (emphasis and alteration in original) (citation and quotation marks omitted). Even if discovery is "useful" to an applicant, "that does not imply that there is any way for [the applicant] to introduce that information as evidence" in a foreign proceeding. See Certain Funds, Accounts, and/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 122 (2d Cir. 2015). Here, Sargeant fails to show that he has any procedural right or mechanism to inject the requested evidence in the London proceeding, given that he is not a party to that proceeding. Nor does Sargeant own a controlling stake—much less any stake—in LAIL that would allow him to direct the use or consideration of such evidence.

Section 1782 does not limit an "interested person" to a litigant or someone holding a formal party status in litigation. This requirement "considerabl[y] overlaps" with the "for use in a proceeding" requirement. KPMG, 798 F.3d at 118. Without some "mechanism by which [an applicant] could use any information obtained through a [Section 1782] order" in the foreign proceeding, the applicant cannot have the "participation rights" sufficient to satisfy the "interested person" prong. KPMG, 798 F.3d at 121. The fact that Sargeant may have a financial interest in the outcome of that litigation is also insufficient "to confer 'interested person' status under the statute." KPMG, 798 F.3d at 119 (listing examples of "[v]arious entities [that] may have a financial stake in litigation to which they have no direct connection," including "[s]hareholders in a company facing a products liability suit [that] are likely to have a financial interest in the outcome of that suit"). Moreover, the mere fact that Sargeant is able "simply to

pass on information" to LAIL does not alone confer "interested person" status. KPMG, 798 F.3d at 120. Finally, an "established right to provide evidence and have the party consider it . . . or a recognized relationship, such as that of an agent and principal" may be sufficient to make an "otherwise stranger to the proceeding an 'interested person.'" KPMG, 798 F.3d at 120 (emphasis in original). However, Sargeant has not shown any such right to direct LAIL's consideration of this evidence or any recognized relationship between LAIL and him that would permit him to do so.

III.     Contemplated Proceedings

Sargeant contends that "depending on the documents disclosed in this application, Applicant may have causes of action in Isle of Man or separately in the United Kingdom." (Section 1782 Application, at 1.) But Sargeant's application as to these inchoate proceedings should also be denied because § 1782 aid is premature.

At the outset, the Supreme Court has rejected the view "that § 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent.'" Intel Corp., 542 U.S. at 259. Instead, § 1782 requires only that the proceeding be "within reasonable contemplation." Intel Corp., 542 U.S. at 259 (citing Hans Smit, "International Litigation Under the United States Code," 65 Colum. L. Rev. 1015, 1026 ("It is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding.")).

Nonetheless, the potential proceedings that Sargeant may (or may not) bring depending on what the discovery reveals are not "within reasonable contemplation." See KPMG, 798 F.3d 113, 123 (2d Cir. 2015) (emphasis in original). Indeed, the Section 1782 Application is bereft of even the broadest contours of what the possible proceeding(s) in the

11

United Kingdom or the Isle of Man may entail—they are entirely embryonic. The "applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated." KPMG, 798 F.3d at 123. The assertion that Sargeant plans to use the evidence he seeks to assess whether to initiate actions in the United Kingdom and the Isle of Man underscores the "mere[] speculative[ness]" of the contemplated proceedings, and is plainly insufficient to provide this Court with "some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." KPMG, 798 F.3d at 124. Courts must guard against the specter that parties may use § 1782 to investigate whether litigation is possible before launching it. In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014). This is exactly what Sargeant seeks to do here. Accord In re Request for Assistance for Ministry of Legal Affairs of Trinidad & Tobago, 848 F.2d 1151, 1156 (11th Cir. 1998), abrogated on other grounds by Intel Corp., 542 U.S. 241 (2004) ("If the judge doubts that a proceeding is forthcoming, or suspects that the request is a 'fishing expedition,' the district court should deny the request.").

      Finally, while this Court does not reach consideration of the Intel factors, Rule 26(b) circumscribes the scope of discovery to that which is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This Court observes that the sweeping discovery requests here—which require Burford to, inter alia, produce the entire record in the Novoship lawsuits—would likely not be proportional to the needs of the Panamanian attachment proceeding, a dispute involving no more than $50,000. In any event, no court could intelligently cabin the scope of this subpoena on the gossamer record in support of Sargeant's application.

## CONCLUSION

For the foregoing reasons, Sargeant's application is denied. The Clerk of Court is directed to mark this miscellaneous case as closed.

Dated: October 10, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.